# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

SCOTT C. COLE, MICHAEL HUNTER
and PETER THOMPSON,

                        Hon. Lawrence P. Zatkoff

           Plaintiffs,           Case No. 11-cv-11590

v.

UNITED TRANSPORTATION UNION,
MALCOLM B. FUTHEY, JR. and KIM N.
THOMPSON, individually and in their official
capacities,

           Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on July 7, 2011

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction on Counts

I and II of their Complaint (Dkt. #8).  Defendants United Transportation Union ("UTU"), Malcolm

B. Futhey, Jr., and Kim N. Thompson (collectively "Defendants") have filed their response to this

motion, and Plaintiffs have since replied.  The Court set a preliminary injunction hearing for June

28, 2011.  The hearing was held on June 28, 2011, and was attended by Plaintiffs' counsel, as well

as Defendants' counsel.  At the hearing, the parties' counsel were well prepared and provided an

articulate presentation to the Court in support of their respective positions, which the Court greatly

appreciates.  At the conclusion of the hearing, the Court took Plaintiff's motion for preliminary

injunction under advisement, allowing the Court to consider the parties' submitted papers and

counsels' oral argument.   For the reasons set forth below, Plaintiffs' motion for preliminary injunction is GRANTED.

## II.  BACKGROUND

Plaintiffs were members and officers of UTU Local 278 ("Local 278").  Local 278 was chartered as a local union of the UTU, which represented UTU members that worked at Norfolk & Southern Railroad ("Norfolk & Southern") in Jackson, Michigan.  Plaintiffs were elected officers of Local 278.  Plaintiff Cole was the elected Chairman of the Local 278 Committee of Adjustment for the Road and delegate to the August 2011, UTU Convention.  Plaintiff Hunter was the elected Chairman of the Local 278 Committee of Adjustment for the Yard, and Plaintiff Thompson was the elected President of Local 278 until December 31, 2010.[1]

On April 14, 2011, Plaintiffs filed a three-count Complaint against Defendants, alleging violations under Section 301 of the Labor Management Relations Act ("LMRA"); 29 U.S.C. § 185, Section 102 of the Labor Management Labor Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 412; and Section 501(b) of the LMRDA, 29 U.S.C. § 501(b).  Defendants consist of the UTU, the international union; Defendant Futhey, President of the UTU; and Defendant Thompson, General Secretary and Treasurer of the UTU.  Generally, Plaintiffs assert that Defendants' revoked Local 278's charter in retaliation for Plaintiffs' opposition to Defendants' viewpoints.

### A. MERGER OF UTU AND SMWIA

According to Plaintiffs, since about 2007, Defendant Futhey, Defendant Thompson, and other UTU officials attempted to interfere with the merger of the UTU and the Sheet Metal Workers

---

[1] Even though Plaintiff Thompson retired in 2010, he continued to serve as the President until completion of his term in November 2011.

2

2:11-cv-11590-SFC-LJM   Doc # 16   Filed 07/07/11   Pg 3 of 23   Pg ID 535

International Association ("SMWIA") to form the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART"). The merger was much litigated, which the Sixth Circuit best summarizes in *Babler v. Futhey*, 669 F. Supp. 2d 873 (6th Cir. 2009):

> During the fall of 2007, the UTU, under the leadership of then-President Paul Thompson, attempted a merger with the Sheet Metal Workers International Association ("SMWIA"). A merger agreement was drafted and submitted to the membership for a ratification vote. The merger agreement as presented was approved by a majority of the members casting a vote.
>
> Just after the vote was concluded, several members of the UTU challenged the merger in the Federal District Court for the Northern District of Ohio on the basis that the vote was improperly conducted and members had not been given a copy of the proposed constitution governing the merged union in violation of the terms of the merger agreement. . . .
>
> In January 2008, at the same time the merger was to be consummated, the leadership of the UTU underwent a transition. Paul Thompson was replaced by Futhey as President of the UTU, and several other newly elected officers replaced those who had held office up to the end of 2007. . . . While Thompson had both sought and supported the merger with the SMWIA, Futhey opposed it, and his administration chose not to defend the merger in the . . . litigation.

*Id.* at 876–77 (citing *Babler v. Futhey*, No. 1:08cv912, 2008 U.S. Dist. LEXIS 90019, at *1–2 (N.D. Ohio Aug. 12, 2008).[2] While Defendant Futhey and his administration opposed the merger, Plaintiff Cole publicly advocated for the merger. He filed multiple internal union charges against Defendant Futhey and others, requesting an accounting and recovery of the UTU funds expended by Defendants to stop the merger.

_____

[2]Due to the litigation regarding the merger, the parties in the United States District Court for the District of Columbia are scheduled to arbitrate whether the merger had been effectuated under the terms of the merger agreement. The arbitration hearing is scheduled for the weeks of June 6 and 13, 2011.

**B.  INVESTIGATION OF LOCAL 278 AND REVOCATION OF ITS CHARTER**

In approximately March of 2009, Delbert Strunk, the General Chairperson of General Committee 687 ("General Chairperson Strunk"), advised the UTU International that Local 278 had fewer than 25 active members.[3]  Due to General Chairperson Strunk's advisement, in September or October of 2010, Timothy Secord, Executive Assistant to the President of the UTU ("Executive Assistant Secord"), compiled a list of 12 UTU locals that were suspected of having fewer than 25 active members, including Local 278.

Pursuant to the UTU International's past practice,[4] Executive Assistant Secord sent a letter to Local 278's officers, on behalf of Defendant Futhey, providing notice that Defendant Futhey intended to close Local 278.  The December 1, 2010, letter states, *"Pursuant to the provisions of Article 73 of the UTU Constitution, please accept this as our notice of intent to revoke the charter of Local 278 effective December 31, 2010 as a result of the falling membership level*."  (Emphasis added).  According to Article 73 of the UTU Constitution, the International President may revoke or surrender a local charter for the following reasons:

> 1. Improper conduct.
>
> 2. Neglecting or refusing to conform to the provisions of this Constitution or the local's by-laws.

---

[3]The General Committee of Adjustment is an intermediary body between the UTU locals and the UTU international governing body.  The committee of adjustment investigates matters affecting the UTU locals under its jurisdiction.  UTU General Committee of Adjustment 687 has jurisdiction over UTU locals in numerous Midwestern states, including Michigan, *i.e.*, the location of Local 278.

[4]According to Defendants, in the year before a UTU Convention, the UTU reviews the local union's billing data to determine the number of active members under each local union's jurisdiction.  Defendants allege that closing unions with fewer than 25 active members in advance of the UTU Convention reduces the costs of the UTU Convention as the UTU is responsible for paying for delegates to attend the UTU Convention.

4

3. Neglecting or refusing to make required returns and reports.

4. Neglecting or refusing to hold at least one (1) regular meeting each month.

5. Neglecting or refusing to elect and install a successor to an officer who was removed from office.

6. Neglecting or refusing to bring an officer or member to trial when directed to do so by the International President.

Article 73 further states,

No charter shall be revoked until the International President has given at least thirty (30) days written notice . . . and an International officer has attended a designated regular meeting of the local . . . .

In compliance with the additional language in Article 73, the letter also states that International Vice President James Cumby ("Vice President Cumby") would attend the December 19, 2010, monthly meeting of Local 278. The letter makes no indication as to the number of Local 278 members.

Submitted to the Court is also Jason Boswell's declaration. Jason Boswell is the assistant of General Chairperson Strunk ("Assistant Boswell"). According to Assistant Boswell, at the directive of General Chairperson Strunk, he reviewed the records of each Local 278 member who appeared on the membership record of Local 278. Assistant Boswell determined each member's craft (e.g., trainman or conductor), position within the craft (e.g., leader), and location where they were working. He then recorded his findings by making handwritten notes next to each member on the membership record provided to him.[5] Based on Assistant Boswell's review, he determined that only nine of the 43 members listed on the December 1, 2010, membership record were working for Norfolk Southern at either Jackson, Michigan or Battle Creek, Michigan (i.e., under the jurisdiction

---

[5]Defendants have attached Assistant Boswell's handwritten notes to his declaration.

of Local 278). Assistant Boswell's findings and the membership record of Local 278, which contained his handwritten notes, were sent to General Chairperson Strunk and Executive Assistant Secord.

Assistant Boswell's findings were not supplied to Vice President Cumby. Vice President Cumby still attended the meeting and prepared an interim report addressed to Defendant Futhey. In the interim report, Vice President Cumby compared the UTU's member dues records to Local 278's dues records. He made no mention of Article 73 of the UTU Constitution. Rather, he noted that "[i]n light of the clear language of Article 40 of the UTU constitution that locals will not be closed until they fall below 25 members, closing this local would be a clear violation of Article 40," and concluded that Local 278 should remain open. Referenced by Vice President Cumby in his interim report, Article 40 of the UTU Constitution states in part:

> Jurisdiction and authority shall not extend to the transfer of members from one local to another local *to result in any local of twenty-five (25) or more members being closed.* Henceforth[,] the International President *shall not* make changes in jurisdiction of locals which would result in closing a local *whose membership is twenty-five (25) or more members.*

(Emphasis added).

Despite Vice President Cumby's report to Defendant Futhey, on December 31, 2010, Defendant Futhey sent a second letter to Local 278 that revoked its charter (effective the same day). The December 31, 2010, letter fails to clearly rely on any certain deficiency of Local 278 that warranted its closing. Instead, the opening paragraph of the second letter states, "Further to our correspondence dated December 1, 2010[,] wherein notice of intent was provided to revoke the charter of Local 278, and notwithstanding the report as furnished by [Vice President Cumby] concerning the same, this is to advise that effective this date, the charter of Local 278 is hereby

6

revoked." Most Local 278 members were then transferred to UTU Local 1477. As a result, Plaintiffs and other officers of Local 278 were divested of their elected positions, including Plaintiff Cole's elected position as delegate to the UTU August 2011 Convention.

## C. INVESTIGATION OF LOCAL 881 AND REVOCATION OF ITS CHARTER

According to Vice President Cumby, Local 881 was also investigated. Local 881 received a similar letter to the December 1, 2010, letter sent to Local 278. Vice President Cumby also attended a regularly scheduled meeting of Local 881 and made a similar conclusion—Local 881's charter should not be revoked as it had more than 25 members. Further, Assistant Boswell conducted a review of Local 881's members similar to the review conducted of Local 278's members. Assistant Boswell's findings were also reported to General Chairperson Strunk and Executive Assistant Secord, but not Vice President Cumby. Vice President Cumby states that even though Local 881's charter was revoked by Defendant Futhey, the transfer of its members differed from that of Local 278. Local 881's members were transferred to Local 206 and Local 1438. Local 881's members, however, retained their elected positions in their new locals, as opposed to Local 278's members, where their officers were removed from their elected positions. Both Local 881 and Local 278 purportedly lost their delegate to the August 2011 UTU Convention.

## D. LOCAL 1477'S RERUN ELECTION

Before Local 278 members were transferred to Local 1477, Local 1477 held an election for local officers, committee chairpersons and a convention delegate in November of 2010. According to Defendant Futhey, the election results were challenged. Defendant Futhey ordered a rerun of the election and directed that no change be made to the nominated candidates. Purportedly following

7

a U.S. Department of Labor ("DOL") guide for election officials ("Guide")[6] for rerun elections, Defendant Futhey also ordered that the rerun had to be conducted under the same circumstances as the original election. However, when the former Local 278 members, including Plaintiffs Cole and Hunter, were transferred to Local 1477 in January of 2011, the members of Local 1477 passed a resolution allowing Local 278 members to vote in and run for office in the rerun election. Defendant Futhey vacated the resolution because it purportedly conflicted with the DOL Guide. Due to Defendant Futhey's order, Plaintiffs Cole and Hunter were unable to run for office or vote in the May 4, 2011, Local 1477 elections.

### E. PLAINTIFFS' APPEAL OF LOCAL 278'S CHARTER

On February 4, 2010, Plaintiffs appealed Defendant Futhey's decision to revoke Local 278's charter to the UTU Board of Directors (the "Board"), pursuant to Article 75 of the UTU Constitution. Defendant Thompson received Plaintiff's appeal letter on February 15, 2011, the date the appeal was deemed filed under UTU policy. According to Article 75, President Futhey had 60 days to respond to the appeal. The next regularly scheduled Board meeting was on April 5, 2011—less than 60 days from the date the appeal was filed. Defendant Thompson then scheduled a hearing on the appeal for the Board's next regularly scheduled meeting on October 4, 2011.

### F. PLAINTIFFS' MOTION

Plaintiffs alleged that Defendants' revocation of Local 278's charter was in retaliation for Plaintiffs' opposing viewpoints on the merger. Plaintiffs support their allegation with the fact, among others, that Local 278's charter was revoked in violation of Articles 73 and 40 of the UTU

---

[6]Defendant Futhey followed the Guide published by the DOL, titled "Conducting Local Union Elections: A Guide for Election Officials."

Constitution. According to Plaintiffs, although Defendant Futhey's December 1, 2010, letter relied on Local 278's "falling membership", "falling membership" is not an enumerated reason under Article 73 that would permit Defendant Futhey to close Local 278. Plaintiffs further assert that Local 278 had 37 members at the time of Defendant Futhey's letter, contrary to Defendants' assertion of 9 members, and that Article 40 prohibits Defendant Futhey from closing a local union with 25 or more members.

According to Plaintiff Cole's declaration that was submitted to the Court, 10 members are not disputed between the parties as properly within the jurisdiction of Local 278.[7] Plaintiff Cole then asserts another 14 members worked in the jurisdiction of Local 278 and Local 1477. These members were permitted to choose which local they wanted to belong to pursuant to Article 47(c) of the UTU Constitution.[8] Two more members of Local 278 had the choice to be a member of either Local 194 or Local 278, and these members also chose Local 278. Six more members of Local 278 were classified as E49 status (i.e., off work due to sickness or disability). Plaintiffs allege such members were entitled to all the privileges of membership, except the right to vote. Plaintiff Cole also states that five other members excluded by Assistant Boswell's handwritten notes were under the jurisdiction of Local 278, essentially stating that the members were only temporarily working

---

[7]According to Plaintiff Cole, Ronald Tucker is based in Jackson, Michigan, which Boswell concedes in Exhibit 1 attached to his declaration, but Boswell apparently omitted Tucker from his final calculations. After review of Exhibit 1, Assistant Boswell's findings as to Tucker are not clear to the Court. Next to the membership entry for Tucker, Assistant Boswell presumably wrote "B557CO." Assistant Boswell also handwrote at the bottom of the two-page membership records the purported local union where each member belonged. Tucker is absent from any of the lists.

[8] Article 47(c) provides, "Notwithstanding the foregoing, and in circumstances in which two (2) or more locals have identical jurisdiction a member may, upon written request, transfer his/her membership from one such local to the other."

on assignments outside of Local 278's jurisdiction.  Lastly, Plaintiff Cole asserts that Plaintiff Thompson's retirement from Local 278 did not make him ineligible to retain his union office or be a member of Local 278 as Defendants assert.  However, it appears to the Court that Plaintiff Cole's Exhibit A, listing the purported 37 members of Local 278, did not use Plaintiff Thompson's membership as his name is absent from the list.

Therefore, Plaintiffs assert the October 4, 2011, hearing date to decide whether revocation of Local 278's charter was appropriate is after the upcoming August 2011, UTU Convention.  By this time, whether Plaintiff Cole may attend the UTU Convention as an elected delegate will be moot.  Thus, Plaintiffs have filed the instant motion, seeking a preliminary injunction.  Plaintiffs request a preliminary injunction (a) reinstating Local 278's charter, (b) restoring Plaintiffs to their elected positions, (c) resorting Plaintiff Cole as elected delegate to the UTU Convention, and (d) preventing Defendants from further actions that infringe Plaintiffs' rights under Section 101(a)(2).

### III. LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled to preliminary injunctive relief:

> (1)   whether the movant has shown a strong or substantial likelihood or probability of success on the merits;
>
> (2)   whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;
>
> (3)   whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and
>
> (4)   whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason Cnty. Med. Ass'n v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977).  The standard for preliminary injunction is not a rigid and

comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied, but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992). Accordingly, a party "is not required to prove his case in full at a preliminary injunction hearing and the findings of fact and conclusions of law made by a court granting the preliminary injunction are not binding at trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

## IV.  ANALYSIS

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

Under the first factor, a plaintiff must establish the likelihood of success on the merits by showing "more than a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)).  "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. Mich. 2007) (citations omitted).

In establishing the first factor, Plaintiffs contend that they have a likelihood of success on showing that: (1) Defendants violated the UTU Constitution by revoking Local 278's charter, and thus, Plaintiffs may sue under Section 301 of the LMRA to enforce the UTU Constitution; and (2) Defendants infringed Plaintiffs' free speech rights in violation of Section 101(a)(2) of the LMRDA.[9]

---

[9]Plaintiffs argue in their motion and brief that they are not required to exhaust internal union appeals on their Section 301 claim or Section 101(a)(2) claim.  It appears to the Court that Defendants concede this point by implicitly stating such in footnote 3 of their response brief and by failing to raise any argument regarding exhaustion during the hearing before the Court on June 28, 2011.  As such, the Court will not address Plaintiffs' exhaustion argument.

11

**I. Violation of Section 301 of the LMRA**

Section 301 claims, codified at 29 U.S.C. § 185, apply only to "[s]uits for violation of contracts between an *employer* and a labor organization representing *employees* in an industry affecting commerce as defined in this chapter, or between any such labor organizations . . . ." 29 U.S.C. § 185(a) (emphasis added). Section 301 claims are inapplicable to disputes over a union labor contract involving railway employees. *See* 29 U.S.C. § 152(2) (excluding "any person subject to the Railway Labor Act" from the definition of "employer"); 29 U.S.C. § 152(3) (excluding "any individual employed by an employer subject to the Railway Labor Act" from the definition of "employee"); 29 U.S.C. § 152(3) (defining "labor organization" as "any organization . . . in which employees participate and which exists for the purpose . . . of dealing with employers concerning grievances, labor disputes . . . .").

Plaintiffs argue that Defendants breached the union labor contract (the UTU Constitution) between the parties by revoking Local 278's charter based on Local 278's declining membership under Article 73 of the UTU Constitution. In response, Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' Section 301 claim, which is analogous to Count I in Plaintiff's Complaint. The Court agrees with Defendants that it lacks subject matter jurisdiction because: (1) Plaintiffs appear to concede Defendants' argument in footnote one of their reply brief; (2) at the June 28, 2011, hearing, Plaintiffs solely relied on their Section 101(a)(2) claim; and (3) the Court's review of the applicable case law supports Defendants' argument. *See Brotherhood of Locomotive Firemen & Enginemen v. United Transp. Union*, 471 F.2d 8, 9 (6th Cir. Ohio 1972) (upholding a district court's dismissal of a Section 301 claim brought by several merged unions against the UTU because  the statute expressly excludes railroad employees).

12

Furthermore, pursuant to Fed. R. Civ. P. 12(h)(3), "Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." After reviewing the Complaint, the Court has determined that it lacks subject matter jurisdiction over Count I of Plaintiffs' Complaint. Therefore, the Court dismisses Count I of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(h)(3) to the extent that it is premised on Section 301 of the LMRA.

## II. Violation of Section 101(a)(2) of the LMRDA (Count II)

Under Section 101(a)(2), codified at 29 U.S.C. § 411(a)(2):

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting . . . .

29 U.S.C. § 411(a)(2). Section 101(a)(2), however, makes clear this right is not absolute in a subsequent clause, stating:

> *Provided*, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

*Id.* at § 411(a)(2). Union leadership violates Section 101(a)(2) when it removes an elected union officer from an elected position as a result of the union officer's speech in opposition to the union leadership. *Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 354 (U.S. 1989).

The issue before the Supreme Court in *Lynn* was whether the removal of a member from an elected position, in retaliation for statements he made at a union meeting, violated the LMRDA. *Lynn*, 488 U.S. at 348. The member was instrumental in opposing a dues increase. *Id.* The member spoke in opposition to the dues proposal at a special meeting and the proposal was defeated. *Id.* at

350.  Five days later, the member received notice that he was being removed from his elected position because of his outspoken opposition to the dues increase. *Id.* at 350.  The Supreme Court determined that the member's attendance at the special meeting and expression of his views were rights protected by Section 101, and the member's removal was the "direct result" of the exercise of these rights.  *Id.* at 354.  Ultimately, the Supreme Court held that the discharge of an elected official is likely to chill the exercise of his own free speech rights and the members who voted for him, and thus the "retaliatory removal" of the member stated a cause of action.  *Id.* at 355.

The Sixth Circuit applied *Lynn*'s holding when reviewing a district court's order granting a preliminary injunction to restore several UTU members to their union offices.  *Babler*, 618 F.3d at 524–25.  The facts underlying the action involved the attempted merger of UTU and SMWIA.  *Id.*; *see* Subsection II.A, *supra*.  The UTU members brought internal union charges against six UTU vice presidents and the national legislative director, alleging violations of the UTU Constitution. *Id.*  The Board removed the members from their elected positions.  *Id.* at 519.  The Sixth Circuit upheld the district court's grant of injunctive relief, stating that, due to the factual similarities of the case to *Lynn*, there was a high probability that the members would succeed on the merits.  *Id.* at 522. The Sixth Circuit found that the members were retaliated against for exercising their LMRDA rights. *Id.* at 523.

Plaintiffs assert that Defendants infringed their rights to free speech in violation of Section 101(a)(2) of the LMRDA, by revoking Local 278's charter, removing Plaintiffs from their elected positions, and eliminating Plaintiff Cole as a delegate to the August 2011, UTU Convention.[10]

---

[10]According to Plaintiffs, Defendant Futhey is up for re-election as International President.  Plaintiff Cole, as delegate for Local 278, was eligible to vote on Futhey's election at the August Convention.

14

Plaintiffs allege that Defendants infringed Plaintiffs' rights to free speech in retaliation for Plaintiffs' views on issues that oppose Defendants' views. Specifically, Plaintiff Cole has been an outspoken opponent of Defendants and has filed multiple internal union charges against Defendants.[11]

Defendants' refute that Plaintiffs' rights to free speech have been infringed and that Defendants' actions were due to retaliation against Plaintiffs for their views. Defendants claim: (1) the UTU rule that the International President may close locals with fewer than 25 members is reasonable; (2) the UTU's longstanding practice is to follow this rule; (3) Defendant Futhey's opposition to the merger of UTU and SMWIA is in good faith; (4) the revocation of Local 278's charter did not interfere with rights protected under § 101(a)2; and (5) Plaintiffs offer no evidence of a casual connection between the revocation of Local 278's charter and the parties' disagreement over the merger.

In this case, the Court concludes that Plaintiffs have a substantial likelihood of proving that they were retaliated against for exercising their LMRDA rights. The Court bases its conclusion on the following findings: (a) the parties do not dispute that Plaintiffs held elected positions, were removed from those positions, and expressed viewpoints that were in opposition to Defendants; (b) Defendants interfered with Plaintiffs' rights under Section 101(a)(2); (c) Defendants' enforcement of Articles 40 and 73 of the UTU Constitution with respect to Local 278 was unreasonable; and (d) the interference with Plaintiffs' rights by revoking Local 278's charter indicates a casual connection

---

[11]Plaintiffs also note Defendant Futhey's order, voiding Local 1477's resolution to permit former Local 278 members to run for office or vote in Local 1477's rerun election, as another example of Defendants' retaliation against Plaintiffs. The Court does not rely on Plaintiffs' argument regarding Defendant Futhey's order, voiding Local 1477's resolution, as Plaintiffs fail to dispute that Defendant Futhey's order was not in accordance with the DOL Guide to ensure that the rights of Local 1477's members were not violated.

between the revocation and the parties' disagreement over the merger.

With respect to Defendants' interference with Plaintiffs' rights guaranteed under Section 101(a)(2), the Court acknowledges Defendants' response that Plaintiffs still have the right to express their views and assemble freely pursuant to Section 101(a)(2) in the local unions from which they were transferred. The transfer, however, of Plaintiffs to their new unions resulted in the loss of their elected positions. As the Supreme Court held in *Lynn*, when an elected officer's exercise of his membership right results in his removal from his position, such removal violates Section 101(a)(2). *See Lynn*, 488 U.S. at 354–55. As such, the Court finds that the mere fact that Plaintiffs were transferred to another union does not defeat their claim under Section 101(a)(2).

Further, to the extent that Articles 40 and 73 of the UTU Constitution allow closing unions with less than 25 members, Defendants' enforcement of this rule was not reasonable. Plaintiffs have submitted sufficient evidence that Local 278 had at least 25 members when Defendant Futhey revoked its charter. First, Vice President Cumby's interim report indicates that at least 36 members were paying dues to the UTU as Local 278 members, based on the UTU's billing records and Local 278's billing records, for each month of 2010. Second, at a minimum, Plaintiffs have established a likelihood of success in showing that Local 278 had at least 25 members as required by Article 40. Nine members are undisputedly within Local 278's jurisdiction. Plaintiffs also have submitted exhibits that show 16 more members were working under two local unions' jurisdictions and chose, as provided in Article 47, to be members of Local 278.

The Court is not persuaded by Defendants' evidence that Local 278 had less than 25 members. Although Defendants cite to Assistant Boswell's handwritten notes, careful analysis of the notes fails to show how Assistant Boswell determined that only 9 members were working under

the jurisdiction of Local 278.  For instance, Plaintiff Cole claims the undisputed number of Local 278 members is 10 because Assistant Boswell omitted Ronald Tucker, who is based in Jackson, Michigan, from his final calculations.  Plaintiff Cole declares that Boswell concedes such in Exhibit 1 attached to his declaration.  Next to the membership entry for Ronald Tucker, Assistant Boswell appears to have written "B557CO."  Assistant Boswell also handwrote at the bottom of the two-page membership records  the local union where each member purportedly belonged.  Ronald Tucker is absent from any of the lists, and it is not clear, based on any other notations, where Assistant Boswell figured that Ronald Tucker belonged.  Because of such inaccuracy, the Court is reluctant to rely on Assistant Boswell's handwritten notes alone to indicate that Local 278 had less than 25 members.

Aside from Assistant Boswell's handwritten notes, Defendants have submitted no other information to the Court that corrorabates his notes.  Defendants even admitted to the Court at the June 28, 2011, hearing to receiving dues from more than 25 members that claim to be Local 278 members.  Defendants then accepted those dues and applied the applicable portion to Local 278's accounts.  Therefore, the Court finds that Plaintiffs have submitted sufficient evidence to show that Local 278 had more than 25 members at the time of its closing and Defendants' enforcement of Articles 40 and 73 was unreasonable.

The Court also finds Defendants' contention that Plaintiffs have shown "no evidence" to suggest a "causal connection between the merger disagreement and the closing of Local 278" unpersuasive: (i) Defendants' inability to show that Local 278 had fewer than 25 members; (ii)Defendants' change in their reason for the revocation; (iii) the time line of events; and (iv) Defendants' differential treatment of Local 278's members compared to Local 881's members;

17

raises a serious question as to the merits that Local 278's revocation was the direct result of Plaintiffs' opposition to Defendants.

First, having determined that Plaintiffs met their burden of demonstrating that Local 278 had more than 25 members, Defendants' reliance on Local 278's "falling membership" in its December 1, 2010, letter appears disingenuous. In Defendants' briefing and oral argument before the Court, Defendants now rely on Article 40 and claim Local 278 had fewer than 25 members. However, it is unlikely that Defendant Futhey relied on Article 40 at the time of revoking Local 278's charter. While the December 31, 2010, letter, which ultimately revoked Local 278's charter, does not contain language that clearly states why Local 278's charter was being revoked, the letter references Vice President Cumby's report. Cumby's interim report noted that revoking Local 278's charter pursuant to Article 40 would be in violation of the UTU Constitution. Thus, Defendants' change from "falling membership" to the 25 membership floor of Article 40 brings into question Defendant Futhey's actual motivations. Not only does Defendants' change in why Local 278's charter was revoked make such revocation appear retaliatory, but the December 1, 2010, letter states that Local 278 had "falling membership levels" even though Vice President Cumby's interim report indicates that Local 278 had 4 transfer applications and 1 new member application sent in with Local 278's December billing.

Third, with respect to the time line of events, Defendants claim that in March of 2009, the UTU allegedly knew that Local 278 had fewer than 25 members. Then in September and October 2010, Secord notified Defendant Futhey that Local 278 had fewer than 25 members. Yet, Local 278's charter was not revoked until after its election, electing Plaintiff Cole to delegate for the UTU Convention. Then when Plaintiffs appealed Defendant Futhey's decision to revoke Local 278's

18

charter, Defendants did not schedule Plaintiffs' appeal to be heard until after the August 2011, Convention. At that point, a portion of Plaintiffs' appeal would be moot. At the June 28, 2011, hearing, Defendants failed to provide the Court with any language in the UTU Constitution that would prevent Defendants' from holding a special meeting to consider Plaintiffs' appeal. As such, Defendants' future hearing date also suggests Defendants were retaliating against Plaintiffs.

In addition, the Court notes the purported differential treatment of Local 278 as opposed to Local 881. As Defendants note, they revoked other UTU unions' charters for the same reason—membership had declined below 25 members. Thus, Defendants argue that Plaintiffs were not singled out. The Court, however, finds such an assertion unconvincing. While Local 881's and Local 278's charters were revoked, Local 881's elected officers retained such positions in the new unions, as opposed to Local 278's elected officers, i.e., Plaintiffs, who were transferred to new unions without retaining their elected positions. Defendants' differential treatment of the two unions remains unexplained and also supports Plaintiffs' claim that such actions were retaliatory.

Therefore, Plaintiffs raise a serious doubt as to Defendants' assertions that their actions were not retaliatory, and, at a minimum, Plaintiffs' Count II is a fair ground for litigation and more deliberate investigation. *See Certified Restoration Dry Cleaning*, 511 F.3d at 543. As such, the Court finds that the first factor weighs in favor of Plaintiffs.

## B. IRREPARABLE INJURY

The Court next considers whether Plaintiffs will suffer irreparable injury without the injunction. *Certified Restoration Dry Cleaning*, 511 F.3d at 550. A plaintiff's harm is irreparable if "it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see Basicomputer Corp. v. Scott*, 973 F.2d 507,

19

511–12 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

Here, the Court finds that the harm Plaintiffs would incur is irreparable harm, as Defendants' revocation of Local 278's charter caused Plaintiffs to lose their right to have an elected official of their choosing and a delegate of their choosing to represent them. These harms are not fully compensable by money damages. Thus, this factor weighs in favor of Plaintiffs.

## C. SUBSTANTIAL HARM TO OTHERS

The Court must also consider "whether the issuance of the injunction would cause *substantial* harm to others." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Defendants contend that Local 1477 (the local union a majority of Local 278 members were transferred) will be harmed due to the loss of dues and membership from the former Local 278 members. Defendants also aver that the UTU international officers and Board would be deprived of their traditional practice to close local unions that fall below a certain membership floor.

Defendants' arguments are unpersuasive. The Court finds that there is no indication that issuing a preliminary injunction would cause substantial harm to third parties. To the extent that Local 1477 suffers harm from the loss of dues and membership, such harm is minimal as Local 278 members were not transferred to Local 1477 until January of 2011. Second, even though a preliminary injunction may undermine the legitimacy and authority of the Board and non-party UTU international officers, such harm is also minimal. Defendants are still able to continue their traditional practice if the membership levels fall below the membership floor of 25 members as specified in the UTU Constitution. The Court has not made a finding regarding the reasonableness of the membership floor of 25, but instead has found that Defendants unreasonably enforced the

20

membership floor.

Moreover, not issuing a preliminary injunction would cause substantial harm to non-party former Local 278 members in several ways. Local 278 members may be unwilling to exercise their LMRDA rights when it appears exercising those rights may result in retaliatory actions from the UTU leadership. *See Babler*, 618 F.3d at 524. Injunctive relief would also positively affect the rights of the other members of Local 278 by restoring Plaintiffs and others to their elected positions. *See Lynn*, 488 U.S. at 355 ("Not only is the fired official likely to be chilled in the exercise of his own free speech rights, but so are the members who voted for him . . . [O]ther members of the Local may well have concluded that one challenged the union's hierarchy, if at all, at one's peril"). And, Local 278 and its officers will not displace other local union officers by being reinstated to their positions in Local 278 because Local 278 was closed. Thus, for the reasons stated above, this factor also weighs in favor of Plaintiffs.

**D. PUBLIC INTEREST**

The Sixth Circuit has determined that the enforcement of contractual covenants is in the public interest. *Certified Restoration Dry Cleaning*, 511 F.3d 535. In the context of disputes between a union and its members, however, courts are traditionally reluctant to be involved in the interpretation of the union's constitution and internal governance. *Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 370 F.3d 542, 550 (6th Cir. 2004); *Vestal v. Hoffa*, 451 F.2d 706, 709 (6th Cir. 1971). Nonetheless, the public interest is also served by protecting the "fundamental rights of individual labor union members as set forth in the LMRDA." *Babler*, 618 F.3d, at 524. Granting injunctive relief in this case will serve the public interest by promoting the purposes of the LMRDA, one of which is "to eliminate or prevent improper practices on the part of labor organizations," and

21

by protecting the rights of the individual members of Local 278. *See* 29 U.S.C. § 401(c).  As such, the Court also finds that this factor weighs in favor of Plaintiffs.

## V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs' request for a preliminary injunction is GRANTED, and the Court hereby ORDERS that Defendants immediately:

1.  reinstate the charter of Local 278;

2.  restore Plaintiffs to their elected positions as officers of Local 278;

3.  restore Plaintiff Cole to his elected position as delegate to the UTU August 2011 Convention; and

4.  cease any further actions that directly or indirectly infringe on Plaintiffs' rights under the LMRDA during the pendency of this litigation.


IT IS FURTHER ORDERED that this Order shall remain in effect until further order of the Court.

IT IS FURTHER ORDERED that Plaintiffs' Count I of their Complaint is DISMISSED to

22

the extent that it states a claim under Section 301 of the LMRA.

      IT IS SO ORDERED.


                                   S/Lawrence P. Zatkoff
                                   LAWRENCE P. ZATKOFF
                                   UNITED STATES DISTRICT JUDGE

Dated:  July 7, 2011

                     CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on July 7, 2011.


                                     S/Marie E. Verlinde
                                   Case Manager
                                   (810) 984-3290